# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) 2:18-cr-00193-JDL |
| ABOUBACAR CONGO, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS

Aboubacar Congo is charged with possessing a controlled substance with the intent to distribute, in violation of 21 U.S.C.A. § 841(a)(1) (West 2019), conspiring to distribute a controlled substance in violation of 21 U.S.C.A. § 846, and maintaining a drug-involved premises in violation of 21 U.S.C.A. § 856(a)(2). Congo seeks to suppress all physical evidence gathered during a search of his apartment (ECF No. 116), which he argues was conducted pursuant to a warrant that lacked probable cause. For the reasons that follow, the motion is **DENIED**.

## I. FACTUAL BACKGROUND

On November 8, 2018, Special Agent Ryan Ford, an agent with the United States Drug Enforcement Administration ("DEA"), submitted an application for a search warrant of an apartment at 42 Washington Avenue in Old Orchard Beach. Agent Ford's affidavit in support of the warrant application described an investigation, which had been conducted in October and early November 2018, into a suspected conspiracy to traffic illegal drugs by Lisa Lambert and several associates. During that period, and pursuant to several search warrants, investigators monitored the text messages sent and received by Lambert's phone. The text messages

indicated that Lambert was involved in the distribution of controlled substances from the apartment at 42 Washington Avenue where she resided with Congo, her boyfriend. Investigators were also authorized to install a tracking device on the vehicle of one of Lambert's associates. The tracking device showed the vehicle consistently traveling to the vicinity of the apartment and, on at least two occasions, parking across the street. Analyzed alongside Lambert's text messages, the movements of the vehicle indicated that it was used to transport illegal drugs from Massachusetts to the apartment.

The last text messages cited by Agent Ford's affidavit were sent or received on November 5, 2018. A magistrate judge approved the search warrant three days after that, on November 8. On November 18, Agent Ford and other DEA agents surveilled 42 Washington Avenue while also monitoring the movements of Lambert's associate's vehicle with the tracking device. They tracked the vehicle to a location in Massachusetts which was known as a frequent area for illegal drug pickups. At approximately 5:45 p.m., the vehicle returned to 42 Washington Avenue and two males entered the apartment. At approximately 6:00 p.m., law enforcement agents entered the apartment pursuant to the November 8 search warrant. The agents found controlled substances and drug trafficking paraphernalia inside. There were seven people in the apartment when the agents entered, including Congo. The agents searched Congo but seized no evidence from his person.

## II. LEGAL ANALYSIS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To satisfy the Fourth Amendment, "a search-warrant application must reveal probable cause to believe two things: one, that a crime has occurred—a.k.a., the 'commission' element; and two, that specified evidence of the crime will be at the search location—a.k.a., the 'nexus' element." *United States v. Rivera*, 825 F.3d 59, 63 (1st Cir. 2016). In determining whether probable cause exists, the judicial officer reviewing a search warrant application must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A reviewing court "afford[s] an ample amount of deference to the issuing magistrate's finding of probable cause" and "will reverse a finding of probable cause only if [it] see[s] no substantial basis for concluding that probable cause existed." *United States v. Faust*, 853 F.3d 39, 46 (1st Cir. 2017) (internal quotation marks omitted).

Congo argues that Agent Ford's affidavit failed to support probable cause to search Congo's apartment because the information it reported was both insufficient and stale.[1]

I am satisfied that Agent Ford's affidavit was sufficient to support a finding of probable cause as to both the commission and nexus elements. The affidavit provided the content, date, and time-stamps of numerous text messages that were purportedly

---

[1] Congo's Motion to Suppress also argues that Agent Ford's affidavit failed to provide probable cause to support the issuance of a warrant authorizing the search of any persons present in the apartment. ECF No. 116 at 1. Congo therefore contends that the search of his person was unlawful and that any evidence recovered from that search must be suppressed. However, because no evidence was recovered from Congo's person, the parties conceded at the suppression hearing that a ruling on this argument would constitute an advisory opinion. I therefore do not address it further.

3

sent and received by Lambert during October and early November 2018. The messages indicated that Lambert and her associates were engaged in the distribution of illegal drugs. Further, the text messages, analyzed together with the movements of the tracked vehicle described in the affidavit, indicated that Lambert was purportedly operating the drug operation out of her apartment at 42 Washington Avenue in Old Orchard Beach. Thus, there was probable cause that an illegal drug operation was being conducted at 42 Washington Avenue and that evidence of the same would be found there.

In addition, the information in Agent Ford's affidavit was not stale. "Information contained in an affidavit is stale if it established probable cause at some point in the past but does not support probable cause at the time of the warrant's issuance." *United States v. McLellan*, 792 F.3d 200, 210 (1st Cir. 2015). "When evaluating a claim of staleness," a court "do[es] not measure the timeliness of information simply by counting the number of days that have elapsed. Instead, [a court] must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (internal citation omitted).

Here, the underlying facts contained in the affidavit pointed to an ongoing drug distribution scheme, and "it is common ground that drug conspiracies tend to be ongoing operations, rendering timely information that might, in other contexts, be regarded as stale." *United States v. Schaefer*, 87 F.3d 562, 568 (1st Cir. 1996); *see also United States v. Nocella*, 849 F.2d 33, 40 (1st Cir. 1988) (noting that "[b]y its very

4

nature, drug trafficking, if unchecked, is apt to persist over relatively long periods of time"). Agent Ford's affidavit relied on information gathered between just three days and about a month before the warrant application—and roughly two to six weeks before the resulting search. In the context of a suspected conspiracy to distribute drugs, this relatively brief period of elapsed time did not render the information stale. *See United States v. Tiem Trinh*, 665 F.3d 1, 14-15 (1st Cir. 2011) (holding that information contained in an affidavit was not stale where one month had elapsed between the warrant's issuance and the last date when surveillance had revealed narcotics-related activity).

### III. CONCLUSION

For the foregoing reasons, Congo's Motion to Suppress Physical Evidence (ECF No. 116) is **DENIED.**

**SO ORDERED.**

**Dated this 19th day of June, 2019.**

                                                /s/ JON D. LEVY
                                         **CHIEF U.S. DISTRICT JUDGE**